UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT STREET,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent.<br>_____/ | Criminal Case No. 15-20624-1<br><br>SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW<br><br>U.S. MAGISTRATE JUDGE<br>DAVID R. GRAND |

**ORDER GRANTING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE [275]**

On July 6, 2020, Albert Street, filed a Motion for Compassionate Release [275] asking this Court for his immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) from Federal Medical Center ("FMC") Rochester due to the COVID-19 pandemic. (ECF No. 275). The Government filed a Response [280] on July 15, 2020. Petitioner filed a Supplemental Brief on July 17, 2020 and a Reply [285] on July 22, 2020. The Court held a hearing on the motion on July 23, 2020. For the reasons stated below, and on the record, the Court **GRANTS** Street's Motion for Compassionate Release [275].

**FACTUAL BACKGROUND**

On October 21, 2016, the Court sentenced Mr. Street to 122 months (10 years, 2 months) of imprisonment for Conspiracy to Distribute and to Possess With Intent

to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (ECF No. 157). His projected release date is October 3, 2025.

Mr. Street is 39 years old. In 2004, Street was shot eight times during a robbery attempt. PSR ¶ 48. The shooting left him paraplegic. Along with an amputated right leg and a spinal cord injury from the shooting, Street has a list of over 20 other serious health conditions including: cardiomyopathy, chronic anemia, multiple urological issues, frequent ulcers and urinary tract infections, and a series of gastrointestinal issues that require him to where a colostomy bag for his bowel movements. (ECF No. 284-3). Due to the prison's inability to provide proper wheelchair seating, Street is completely bedridden and has requires "aggressive nursing care." (*Id.*). The only exception to his bedrest are medical appointments outside of the prison. (*Id.*). Despite his limitations, he is able to operate a phone and computer and manage his commissary account independently. (*Id.*).

Street first asked his warden for compassionate release in 2019 and was denied. (ECF No. 275-3). Street asked for compassionate release again on May 15, 2020 due to his vulnerability to the COVID-19 virus. (ECF No. 275-4). On May 26, 2020, Street's warden approved his request. (ECF No. 283-3, PageID. 2213). On May 29, 2020, his warden referred Street's request to the Office of General Counsel for administrative review and recommended his release. (ECF No. 283-4, PageID.

2215). Street has not yet heard from the Office of General Counsel about this referral and recommendation.

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

Because 30 days has lapsed since the warden's receipt and approval of Street's request for compassionate release, there is no dispute that Street has exhausted his administrative remedies. *See United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Street poses a danger to the community, and third, whether a sentence

reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Street, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.**--
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--
> > **(I)** suffering from a serious physical or medical condition,
> > **(II)** suffering from a serious functional or cognitive impairment, or
> > **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> > [. . .]
>
> **(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Street has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, Government Executive (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at \*7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is

sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *see also United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2.

Street argues that his underlying conditions warrant similar treatment and the Government does not dispute this. His multitude of disabilities and severe conditions place him at high risk for serious illness or death from COVID-19. *People with certain Medical Conditions, Centers for Disease Control and Prevention,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 24, 2020).

Furthermore, the Court's concern for Street's safety is not dissuaded by the fact that FMC Rochester has no reported inmate cases of COVID-19. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 24, 2020). The prison's report of zero confirmed cases is more likely a result of a lack of testing rather than the virus' absence in the prison. Considering the severity of Street's ailing health, the Court refuses to allow him to be continually exposed to a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for Street's immediate compassionate release.

2. Danger to the Community

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Government solely opposes Street's release based on the potential danger to the community he poses and relies on his past criminal conduct, disciplinary record in prison, and high recidivism level for support. (ECF No. 280-4; 280-2). Although Street has had four disciplinary incidents in prison for phone abuse, possessing an unauthorized item, and disruptive conduct, they have been relatively minor and non-violent. (*Id.*). For example, the most recent incident, where Street was found in possession of an unauthorized object, was merely Street's attempt to make a "homemade air freshener" to mask the smell of bowel movements from other bedridden inmates who were not cared for quickly enough. (ECF No. 280-3; 285, PageID. 2321).

In addition, although Street's criminal history is serious, Street assures the Court that he is five years sober and no longer wishes to engage in criminal activity to support his addiction. Most significantly, despite Street's record, the warden's recent approval of Street's compassionate release weighs heavily in his favor. Regardless of what Street's record reveals, by virtue of his position and contact with Street, his warden knows first-hand the severity of Street's criminal proclivity, if any.

The Court also takes comfort in the fact that he will be taken care of by family who are equipped to provide the care he needs and separate him from his prior criminal contacts. (ECF No. 283, PageID. 2208). Upon his release, Street plans to reside with his Aunt, sister and her three children in Toledo, Ohio, away from his prior criminal influences in Detroit. (*Id.*). Both his Aunt and sister have been trained in home caregiving, have cared for him in the past, and are equipped to care for him again. (*Id.*). Additionally, a probation officer has already conducted a home inspection and approved of the placement upon Street's release. (ECF No. 284-7; 284-8).

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the July 23, 2020 hearing. Street's crimes were serious, but any potential danger to the community is mitigated by his sobriety, family support, and supervised release conditions. Finally, the potential danger of Street's medical conditions outweighs any marginal benefit he would receive from finishing his remaining time in prison. Compassionate release is therefore in line with the § 3553(a) factors.

## Conclusion

**IT IS ORDERED** that Petitioner's Motion for Compassionate Release [275] is **GRANTED**.

**IT IS FURTHER ORDERED** that BOP officials at FMC Rochester shall have up to 14 days to arrange and transport ALBERT STREET ((51502-039) through direct flight or ground transportation to Toledo, Ohio.

**IT IS FURTHER ORDERED** that upon his release, Street will begin his 4-year term of **SUPERVISED RELEASE**, as outlined by the October 21, 2016 Judgment and be supervised by the Northern District of Ohio Probation Office. (ECF No. 157).

**IT IS FURTHER ORDERED** that during his supervised release, Street's phone and computer activity will be subject to monitoring, as technology permits.

**SO ORDERED**.

Dated: July 27, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge